IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ERIC T. WRHEL,

                                Plaintiff,

  v.                                                      OPINION and ORDER

UNITED STATES OF AMERICA,                       21-cv-424-jdp

                                Defendant.

---

      Eric T. Wrhel, appearing pro se, brings this lawsuit under 26 U.S.C. § 7422 to recover overpayments of income taxes for 2016 and 2018. Defendant United States has filed a motion for summary judgment, Dkt. 18, that I will grant because Wrhel's claim about his 2016 overpayment is untimely and because the IRS properly offset his 2018 overpayment against a previous year's unpaid tax debt.

UNDISPUTED FACTS

      Wrhel has failed to follow this court's procedures for briefing summary judgment motions. He has not submitted proposed findings of fact or responses to the government's proposed findings. But he has submitted tax records and other documents that I will consider. The following facts are undisputed except where noted.

      This case concerns plaintiff Wrhel's 2016 and 2018 income taxes. Those taxes were one of the subjects of Wrhel's Chapter 13 bankruptcy proceedings in the United States Bankruptcy Court for the Western District of Wisconsin, No. 19-13772-13. In that case, the IRS filed a proof of claim identifying Wrhel's estimated federal income tax liabilities for 2014, 2015, 2016, and 2018; the IRS had no record of Wrhel having filed tax returns for those years. Wrhel

objected, stating that after the IRS filed its proof of claim, he had mailed tax returns for 2016 and 2018 showing that he was entitled to refunds for both of those years. The IRS amended its proof of claim to remove Wrhel's purported liabilities for 2016 and 2018.

Wrhel contends that he completed both federal and Wisconsin tax returns for 2016, 2017, and 2018 in late October 2019 and mailed each return in separate envelopes in early November 2019. He submits copies of those documents dated October 29, 2019, but without any postmarked envelopes. Dkt. 24-2; Dkt. 24-3; Dkt. 24-4. As relevant to Wrhel's claims in this lawsuit, his 2016 federal return states that he was owed a refund of $558.12 and his 2018 federal return states that he was owed a refund of $345.86. In late November 2019, Wrhel received state-tax refunds for 2016, 2017, and 2018. Wrhel also produces a refund notice and check from the United States Treasury reflecting his refund for his 2017 taxes, both dated December 2019. But there is no evidence directly showing that the IRS received Wrhel's federal returns for 2016 and 2018.

In December 2020, Wrhel filed claims for refund with the IRS concerning his 2016 and 2018 taxes, including copies of his 2016 and 2018 returns. The IRS marked those documents received December 21, 2020. The IRS amended its proof of claim in the bankruptcy proceeding, offsetting the $345.86 overpayment of Wrhel's 2018 taxes against the approximately $15,000 debt that the IRS claimed for Wrhel's 2014 taxes.

I will discuss additional facts as they become relevant to the analysis.

## ANALYSIS

Wrhel seeks a refund of the overpayments he made to the IRS for 2016 and 2018. Taxpayers may bring lawsuits seeking refunds for overpayments under 26 U.S.C. § 7422 (titled

"Civil actions for refund"). The government moves for summary judgment on Wrhel's § 7422 claim for each year.

## A.  2016

Claims brought under § 7422 are an exception to the United States' general sovereign immunity from suit. But the government's sovereign immunity is waived only when the taxpayer follows IRS regulations for such claims. 26 U.S.C. § 7422(a). The government contends that Wrhel failed to file his claim for refund within the time allowed.

Taxpayers must file administrative claims for tax refunds, and treasury regulations construe a taxpayer's tax return as his administrative claim, 26 CFR § 301.6402-3(a)(5), so Wrhel has fulfilled the requirement that he file an administrative claim. Nonetheless, there is a limit to how late a claim can be filed. Under 26 U.S.C. § 6511(b)(2)(A), "the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return." "This 'look back' rule thus precludes even a timely filed claim from seeking a refund of amounts paid more than three years prior." *Israel v. United States*, 356 F.3d 221, 223 (2d Cir. 2004); *see also Curry v. United States*, 774 F.2d 852, 855 (7th Cir. 1985). And generally a tax return is considered "filed" when it is delivered to the IRS. *See, e.g.*, *Davis v. United States*, 230 F.3d 1383, 1383 (Fed. Cir. 2000) ("To be properly filed, a claim for refund must be physically delivered to and received by the IRS, unless . . . an exception to the physical delivery rule applies.").

It is undisputed that Wrhel had the full amount of his 2016 and 2018 taxes withheld by his employer; the IRS deems those taxes paid on April 15 the following year, *see* 26 U.S.C. § 6513(b)(1), so Wrhel's 2016 taxes were deemed paid on April 15, 2017. In its brief-in-chief,

the government argued that Wrhel's overpayment-refund claim fails because his December 2020 return was filed beyond the three-year deadline for Wrhel to recoup overpayments made in April 2017. I agree that under § 6511(b)(2)(A) the December 2020 return was too late. *See Curry*, 774 F.2d at 855 ("Because the Currys are deemed to have paid all the withheld taxes for which they seek refund on April 15, 1976 and April 15, 1977 and these dates are more than three years preceding the July, 1980 date on which they filed for refund, the Currys may not obtain any of the refund sought."); *Israel*, 356 F.3d at 226 ("the 'look back' rule . . . seeks to prevent taxpayers from asserting stale claims for credits or refunds.").

In response, Wrhel contends that he filed another set of returns before December 2020, within three years of April 2017: he says that he mailed his 2016, 2017, and 2018 federal and state returns in early November 2019. I take him to be saying that he mailed each of these six returns in separate envelopes. The IRS states that it didn't receive those copies of his 2016 and 2018 returns.

The government argues that Wrhel's assertions should be excluded under the "sham-affidavit" rule because he didn't mention the November 2019 mailings in his complaint, and because unsworn statements in a brief are not evidence. But the government doesn't cite any authority stating that the sham affidavit rule applies to statements inconsistent with a plaintiff's unsworn complaint, and Wrhel's new statements only supplement—not contradict—his complaint. As for statements in Wrhel's briefs, I am inclined to give a pro se litigant some leeway with summary judgment procedures, and any in any event, Wrhel's statement about when he originally mailed his 2016 tax return is supported by the evidence. He submits: (1) his returns dated October 2019; and (2) his 2017 federal refund and 2016–2018 state refunds

4

dated December 2019, which suggest that he indeed mailed all six of his 2016–2018 federal and state returns in December 2019 within the three-year look-back period.

Ordinarily, a party's assertion that he mailed a document on a certain day might be enough to force a trial on that issue. *See, e.g.*, *Vincent v. City Colls. of Chi.*, 485 F.3d 919, 922 (7th Cir. 2007) ("Evidence of mailing is evidence of delivery." (citing *Hagner v. United States*, 285 U.S. 427 (1932))). But that does not hold true for tax claims like Wrhel's. Under 26 U.S.C. § 7502, the only exceptions to the "physical delivery rule" are (1) when a document is postmarked before the deadline and received by the IRS after the deadline; and (2) when a taxpayer has proof that he sent a document by registered mail before the deadline. After the passage of § 7502, courts split on the question whether that statute supplanted the common-law mailbox rule (there are no binding Seventh Circuit cases on the issue). *Compare Miller v. United States*, 784 F.2d 728, 731 (6th Cir. 1986) ("the only exceptions to the physical delivery rule available to taxpayers are the two set out in section 7502"); *Deutsch v. Comm'r*, 599 F.2d 44, 46 (2d Cir. 1979), *with Sorrentino v. IRS*, 383 F.3d 1187, 1193 (10th Cir. 2004); *Est. of Wood v. Comm'r*, 909 F.2d 1155, 1161 (8th Cir. 1990) ("we think that [§ 7502(c)] is better read as a safe harbor which does not exclude application of a presumption of delivery in those cases in which the terms of the statute are otherwise met.").

In response to this split, the Department of the Treasury issued a regulation resolving this dispute by clarifying that § 7502 replaced the common-law mailbox rule:

> Other than direct proof of actual delivery, proof of proper use of registered or certified mail, and proof of proper use of a duly designated [private delivery service], are the exclusive means to establish prima facie evidence of delivery of a document to the agency, officer, or office with which the document is required to be filed. No other evidence of a postmark or of mailing will be prima facie evidence of delivery or raise a presumption that the document was delivered.

26 C.F.R. § 301.7502-1(e)(2) (as amended August 2011).

Courts have applied this regulation to foreclose claims like Wrhel's. *Baldwin v. United States*, 921 F.3d 836, 841–42 (9th Cir. 2019) ("The regulation makes clear that, unless a taxpayer has direct proof that a document was actually delivered to the IRS, IRC § 7502 provides the exclusive means to prove delivery. In other words, recourse to the common-law mailbox rule is no longer available."); *see also Crispino v. IRS*, No. CV 17-13751, 2021 WL 3910000, at *5 (D.N.J. July 26, 2021); *Taha ex rel. His Deceased Brother v. United States*, 148 Fed. Cl. 37, 44 (Fed. Cl. 2020), *aff'd sub nom. Taha v. United States*, 28 F.4th 233 (Fed. Cir. 2022). Wrhel doesn't present any evidence that he met either of the exceptions to § 7502 Under 26 C.F.R. § 301.7502-1(e)(2), I cannot consider his other evidence suggesting that he mailed his 2016 return in November 2019. So I will grant summary judgment to the government on Wrhel's claim for refund of overpayment of his 2016 taxes.

## B. 2018

Wrhel's claim for refund of his 2018 tax overpayment doesn't have the same timeliness problem. But he is not entitled to a refund of that overpayment because the IRS applied that overpayment toward his large debt for unpaid 2014 taxes. Under 26 U.S.C. § 6402, the IRS "may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment."

In his brief, Wrhel states that his "2018 return was protected under bankruptcy law," Dkt. 24, at 5, but he doesn't explain what he means by that, and the bankruptcy code preserves a creditor's right to setoff that exists under non-bankruptcy law. 11 U.S.C. § 553(a). In this case, § 6402 allows the IRS to offset unpaid tax debt with a debtor's overpayment from a

6

different year, provided both the unpaid tax debt and the overpayment both occurred before the bankruptcy petition was filed. *See, e.g., In re Reed*, 500 B.R. 564, 566 (Bankr. W.D. Wis. 2013); *In re Pleasant*, 320 B.R. 889, 892 (Bankr. N.D. Ill. 2004). It is undisputed that the 2014 debt and 2018 overpayment predate the 2019 bankruptcy proceeding, so Wrhel has no right to receive a refund of his 2018 overpayment instead of having the refund used to offset his tax debt. And Wrhel is not proceeding on a claim directly about the IRS's 2014 tax assessment; he would need to exhaust the IRS's procedures for administrative claims for his 2014 taxes before filing a separate lawsuit about that year. I will grant summary judgment to the government regarding Wrhel's 2018 claim.

ORDER

IT IS ORDERED that:

1. Defendant's motion for summary judgment, Dkt. 18, is GRANTED.
2. The clerk of court is directed to enter judgment in defendant's favor and close the case.

Entered September 18, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge